[Crim. No. 7838.   Second Dist., Div. Three.   June 7, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. MANUEL SCHOBER, Defendant and Appellant.

Gladys Towles Root and Eugene V. McPherson for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Stanley X. Cook, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Manuel Schober was accused by information of the crime of rape in separate counts, namely, in Count I defendant accomplished the act against Mrs. F. who resisted but her resistance was overcome by force and violence and, in Count II, the act was committed when the same victim was prevented from resisting by threats of great and immediate bodily harm accompanied by apparent power of execution. (Pen. Code, § 261.) In a jury trial defendant was convicted upon Count I. Count II was dismissed. Defendant's motion for a new trial was denied and he was sentenced to state prison. He appeals from the judgment and the order denying him a new trial.

The points on appeal are that the evidence was insufficient to justify the verdict; there was error in the admission of testimony of the prosecutrix and in denying the motion for a new trial.

The essential facts in evidence are the following: Mrs. F., cashier at a market, left work January 27, 1961, at about 11 p. m.; she went to the Den Café with a girl friend, Frances Young; she had not been there before; she met defendant whom she had not known, and danced with him. At about 1:45 a. m. Mrs. F., Frances and defendant left the Den to go to another café; Mrs. F. and Frances went in Mrs. F.'s car and defendant followed in his car; on the way they went to where Frances' car was parked and there Frances decided not to accompany the others to the café, and she departed.

Mrs. F. entered defendant's car and they went to a café where they had something to eat. They then entered defendant's car, Mrs. F. believing she would be driven to where her car was parked. They drove for a short distance when defendant turned into a vacant, unlighted parking lot. As to the foregoing there was no conflict in the evidence. As to the events which followed the jury had to choose between the account given by Mrs. F. and the version given by defendant. Mrs. F. testified that as soon as the car was stopped defendant got out, came around to the passenger's side, entered the car, forced Mrs. F. down on the seat and got on top of her. She was partly under the steering wheel. Defendant twisted her left arm underneath her; she struggled to free herself and kept trying to push defendant away, but was helpless. She pleaded with defendant to desist and take her to her car. Defendant said: "Do you want me to hit you?" She answered "No" and defendant said then she had better stop fighting him. He kept twisting her arm and she was unable to move. Defendant accomplished an act of intercourse. During this time defendant had been struggling with Mrs. F.'s undergarments and got them part way off. With the intention of accomplishing another act of intercourse defendant got out of the car and tried to get his victim to "scoot" toward the open door. Mrs. F. got out of the car. Her undergarments were part way down. She removed them, picked up her purse from the ground and fled from the parking lot. Defendant ran after her. Mrs. F. ran to a service station nearby and made a complaint to Mr. Wages, the attendant. Mr. Wages testified that when he first saw Mrs. F. and defendant they were standing still; Mrs. F. appeared to be saying something to defendant and she then ran. When she came to the station she was crying and hysterical. She had something in her hand which she put into her purse. He saw no sign of injuries upon her and no torn clothing. Mr. Wages saw defendant running with his pants partly down, and saw him fall. Wages attracted the attention of the police, who were in a car nearby. Defendant fled in his car, without lights, and ran a boulevard stop sign. He was overtaken when he drove into a driveway and was found lying on a car seat. His pants had a large tear from the crotch half way to the knees. Defendant was placed under arrest. Returning to the service station with defendant the officer learned of the accusation of Mrs. F. Defendant when questioned admitted an act of intercourse and stated that it was with the consent of Mrs. F. The officer first observed

Mrs. F. when she was standing beside Mr. Wages. He did not speak with her at that time. When he returned with defendant in custody Mrs. F. was crying, but coherent. She then made a complaint against defendant. Defendant and Mrs. F. were taken to the South Gate Police Station.

Defendant testified that the act of intercourse was consented to by Mrs. F. and that he used no force and uttered no threats. It would serve no purpose to relate his version of the affair, since the jury did not believe it.

The argument on the weight of the evidence is merely an attack upon the credibility of Mrs. F. The contention that the act could not have been committed as described by Mrs. F. fails to take into account that it did happen, and that the versions of the participants differed only with respect to the manner of its accomplishment. The jury determined that it happened as described by Mrs. F., and since there was no reason for the jury to doubt that it could have happened in that manner, their acceptance of her testimony as the truth is not subject to review.

Defendant's principal contention is that the evidence was insufficient to prove that Mrs. F. resisted and that defendant accomplished the act by the use of force and violence. It is argued that Mrs. F. did not cry out. Her explanation was that the radio was going "full blast" and there was no one nearby to whom she could call for help. She testified that one reason she did not call out was that she was in fear of defendant. He made a threat to strike her if she did not cease struggling with him. It is argued that she should have made a greater effort to escape. Her answer was that she could not escape until it was too late and that she did escape at the first opportunity.

Defendant does not contend that the resistance described by Mrs. F. was insufficient to establish her lack of consent. His reliance is upon "the inherent improbability of the testimony of the prosecutrix as being true." It is said in his brief: "It is contended that in light of the evidence in the instant case, the testimony of the prosecutrix with regard to lack of consent should be disbelieved." And yet defendant realizes that in order to warrant the rejection of the testimony of Mrs. F. as incredible it would have to appear that she testified to the impossible or to conduct that no sane person would be likely to be guilty of. (*People* v. *Bryant,* 157 Cal. App.2d 528 [321 P.2d 45].)

■ Since the contention is that Mrs. F.'s testimony was not worthy of belief and not that it did not show that she had offered sufficient resistance we need only say as the court said in *People* v. *Ogden,* 41 Cal.App.2d 447, 455 [107 P.2d 50], "The sincerity and genuineness, as well as the extent, of the resistance or nonconsent are questions addressed solely to the jury."

■ Mrs. F. testified on direct examination that she was pregnant and that she had had no intercourse with any man other than defendant during the year and a half she had been separated from her husband. Although this question was not objected to it is contended that it was error for the court to permit it to be answered. There was no error. The testimony was relevant to the question whether Mrs. F. had been raped, and the answer stated a circumstance which tended to corroborate her testimony.

■ It is finally contended that a new trial should have been granted upon the ground of newly discovered evidence. The showing was manifestly insufficient to warrant a new trial. It consisted of an affidavit of an investigator who interviewed neighbors of Mrs. F. and her mother, the purpose being to obtain evidence that Mrs. F. was wanting in chastity. The effort failed. There was not even a single statement of the unfriendly neighbors who were interviewed that reflected upon Mrs. F.'s chastity.

There was no showing of diligence in making inquiry as to the chastity of Mrs. F. In fact, the matter had not even been investigated until about two months after judgment had been rendered. The motion was properly denied.

The judgment and the order denying motion for new trial are affirmed.

Ford, J., and Files, J., concurred.