[No. 1589-1.   Division One—Panel 2.   June 18, 1973.]

The State of Washington, *Respondent,* v. Wendell Thomas, *Appellant.*

*Bruce A. Butcher,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Ronald H. Clark, Deputy,* for respondent.

CALLOW, J.—A young girl lived in a house she shared with two roommates in the University District of Seattle. On the night of August 28, 1971, she and a girlfriend who was visiting her were alone in the house. The two girls retired after 11 o'clock at night to two separate rooms. She turned out the light in her room after midnight and shortly thereafter heard a sound and saw a man enter the room with a flashlight. She testified that he shined the light in her eyes and said, "Don't scream or I will kill you." He sexually assaulted her, departing approximately 45 minutes after he had entered. A jury found the defendant guilty of rape and burglary.

The issues presented are (a) the question of whether her identification of a photograph of the defendant was impermissibly suggested by the law enforcement officers; (b) whether the inadvertent reference to "mug shots" instead of photographs by a police officer during his testimony at trial was prejudicial error; and (c) whether the jury was improperly instructed concerning the element of consent.

The victim went to the police station and was shown a book and a stack of photographs. She testified that she was getting ready to pick up the book and on top of the stack of photographs, there was a picture of the defendant which she recognized immediately. She said she was able to identify her assailant because of the light from his flashlight, the light from a neighbor's window and the light from her electric blanket.

The identification of the photograph of the defendant as her assailant did not occur because the law enforcement officers implanted recognition of the defendant in the victim's mind. The evidence reflects that it came about as a result of her independently linking her remembrance of her attacker with the picture of the defendant. Experience has shown eyewitness identification to be fallible, and the law seeks to avoid error. To minimize the chance of mistake, it is required that the recognition of the photograph of a suspect spring from the mind of the victim free of any

suggestion or cue which would substitute the concept of the policeman for that of the injured citizen.

■ The phrase "impermissibly suggestive" has been misunderstood as suggesting that there are actions that, though suggestive, could be permissible. However, all outside prompting and direction is forbidden, and we interpret the term as meaning that any action that is suggestive is impermissible. In this case, the viewing by the victim of the photographs did not have within it aspects of suggestion. The evidence is that her recognition of the picture of the defendant came from her own mind. *State v. Cantrell,* 81 Wn.2d 213, 500 P.2d 777 (1972); *State v. Nettles,* 81 Wn.2d 205, 500 P.2d 752 (1972); *State v. Moore,* 7 Wn. App. 1, 499 P.2d 16 (1972); *State v. Lane,* 4 Wn. App. 745, 484 P.2d 432 (1971).

■ During the course of his testimony, a detective of the police department referred to the photographs shown to the complaining witness as "mugs" from the "mug books." It appears from the record that the use of this term was the unintentional reflex of the witness and not a purposeful introduction of prejudice to the defendant. The statement in *State v. Allen,* 72 Wn.2d 38, 40, 431 P.2d 590 (1967), is apropos:

> Viewing the use of this term ["mug picture"] by the witness against the backdrop of all the evidence, we do not believe that it so tainted the proceedings that appellant did not have a fair trial. . . .
> We most emphatically do not condone the use of terms like "mug shot" or "mug picture" by state witnesses in criminal prosecutions. It would not unduly burden the state were it to instruct its witnesses, prior to trial, not to fall into the use of such terms while giving testimony. Besides raising the inference of prior convictions, the voluntary use of such derogatory slang terms is unseemly and should not be permitted.

(Citations omitted.)

The use of the term in this trial, while regrettable, fits the situation present in the *Allen* case. It did not taint the

defendant to the extent that the jury could not objectively determine his guilt or innocence of the crime charged.

The defendant proposed the following instruction:

"You are instructed that upon a charge of rape, if consent appears, however reluctant it may be, there can be no conviction, and consent may sometimes be inferred if there has been no outcry and no serious resistance."

Rape is an act of sexual intercourse committed against the will and without the consent of the female. RCW 9.79.010.

The burden of proving the lack of consent by the prosecuting witness is upon the state. *State v. Chambers,* 50 Wn.2d 139, 309 P.2d 1055, 62 A.L.R.2d 1080 (1957). The jury must decide whether the woman was willing or not. If they can believe from her testimony that she did not willingly approve, permit, consent or agree, then there has been a prima facie establishment of that element of the crime. A consent given out of apprehension or fear is not acquiescence by one amenable to the act. Corroboration of the complaining witness is no longer necessary, *State v. Clayton,* 32 Wn.2d 571, 202 P.2d 922 (1949), and whether the act was performed willingly with the consent of the woman is a question of fact for the jury to decide from all the evidence. *State v. Bridges,* 61 Wn.2d 625, 379 P.2d 715 (1963); *State v. Wampler,* 3 Wn. App. 378, 475 P.2d 316 (1970); *State v. Mellis,* 2 Wn. App. 859, 470 P.2d 558 (1970). Reluctant submission does not imply consent, *Hazel v. State,* 221 Md. 464, 157 A.2d 922 (1960); nor is the extent of resistance or lack of resistance by the woman other than an item of evidence to be considered by the jury along with all other evidence which bears upon willingness and consent.

It was stated in *Bridges* at page 628:

"Resistance," mentioned in the statute, is not one of the elements of the crime of rape; it is evidence of want of consent which is an element. *State v. Meyerkamp,* 82 Wash. 607, 144 Pac. 942 (1914).

and in 1 R. Anderson, *Wharton's Criminal Law and Procedure* § 308 (1957) at page 639, we find:

> Resistance is not an essential element of rape except in the negative sense that the absence of resistance may under the circumstances indicate that the prosecutrix did in fact consent to the defendant's act. The crime of rape may be established although no positive evidence of resistance is shown.

(Footnotes omitted.) The lack of outcry is of like effect in determining the credibility of the woman's testimony on this element of the crime. *State v. Mellis, supra.*

The instruction proposed by the defendant was properly refused by the trial judge. The instruction, if given, would have constituted an interpretation of RCW 9.79.010 not supported by its terminology. The statute does require that the absence of resistance be brought about by force or by fear of immediate and great bodily harm but uses the term "resistance" as meaning opposition, rejection, and refusal —the antonym of consent. Further, to have given the proposed instruction would have imposed erroneously a requirement that the complaining witness justify her actions and allowed the jury to infer consent if they found a lack of outcry and "serious resistance."

■ The proposed instruction is a quote from *State v. Marable,* 4 Wn.2d 367, 374, 103 P.2d 1082 (1940). The *Marable* decision has not been cited previously by the appellate courts of this state, and the statement from the decision is unsupported by authority and at odds with the approach espoused in *State v. Bridges, supra; State v. Pitmon,* 61 Wn.2d 675, 379 P.2d 922 (1963); *State v. Baker,* 30 Wn.2d 601, 192 P.2d 839 (1948); *State v. Wampler, supra;* and *State v. Mellis, supra.* The concept that a woman consents unless she struggles to the limit of her strength is a long discarded standard. *State v. Pilegge,* 61 Wash. 264, 112 P. 263 (1910); *State v. Wampler, supra.*

Defense counsel was not precluded from arguing his theory of the case under the instructions given. Defense counsel conceded there was no intention of presenting as a

defense an admission that while the defendant perpetrated the act he did so with consent. Further, the trial court instructed the jury in part:

To convict the defendant of the crime of rape . . . the state must prove to you beyond a reasonable doubt:

(1) That on or about . . . the defendant willfully, unlawfully and feloniously against her will and without her consent did perpetrate an act of sexual intercourse with . . . a female person . . . and not the wife of the defendant;

(2) That the resistance of . . . to such act of sexual intercourse was either:

(a) forcibly overcome; *or*

(b) prevented by fear of immediate and great bodily harm which she had reasonable cause to believe would be inflicted upon her; and

(3) That the above-mentioned acts occurred in King County, Washington.

The jury was also instructed

Under the laws of the state of Washington, rape is an act of sexual intercourse with a female of the age of ten or more years, not the wife of the perpetrator, committed against her will and without her consent, when her resistance is forcibly overcome, or when her resistance is prevented by fear of immediate and great bodily harm which she has reasonable cause to believe will be inflicted upon her.

The judgment is affirmed.

HOROWITZ and WILLIAMS, JJ., concur.

Petition for rehearing denied July 23, 1973.

Review denied by Supreme Court September 25, 1973.